Ross C. Anderson (#0109)
**LEWIS HANSEN**
The Judge Building
Eight East Broadway, Suite 410
Salt Lake City, Utah 84111
Telephone: (801) 746-6300
Fax: (801) 746-6301
randerson@lewishansen.com

*Attorney for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TERRY MITCHELL,<br><br>                Plaintiff,<br><br>v.<br><br>RICHARD WARREN ROBERTS,<br><br>                Defendant. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**<br><br>Case No.: 2:16-cv-00843-PMW<br><br>Magistrate Judge Paul M. Warner |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ...........................................................................................................1

ARGUMENT ...................................................................................................................3

I.     IF THE LEGISLATIVE BRANCH EXPRESSES ITS INTENT TO EXPAND OR ELIMINATE "VESTED" RIGHTS—AS THE UTAH LEGISLATURE DID IN THE PASSAGE OF HOUSE BILL 279—THE COURTS MUST GIVE EFFECT TO THE LEGISLATION UNLESS IT IS UNCONSTITUTIONAL. .................................................3

II.    THIS COURT MUST APPLY UTAH CODE ANN. § 78B–2–308 ACCORDING TO ITS EXPRESS TERMS AND THE CLEARLY STATED LEGISLATIVE INTENT THAT CLAIMS FOR CHILD SEXUAL ABUSE THAT WERE PREVIOUSLY TIME-BARRED BE REVIVED................................................................................................6

    A.  Utah Courts Apply a Statute Retroactively If (1) There Is a Clear Expression of Legislative Intent That the Statute Is to Be Applied Retroactively *or* (2) the Statute Is Procedural and Does Not Affect Vested Rights.................................................................................7

    1.  The Utah Legislature Unambiguously Expressed Its Intent in the Text of the Statute That Claims for Sexual Abuse, Time-Barred as of July 1, 2016, Are to Be Revived................11

    2.  Consistent with the Text of the Current Statute of Limitations, the Legislative History of the Recent Amendment, as Well as a Public Video by Advocates for H.B. 279, Makes Clear the Utah Legislature Intended That Previously Time-Barred Claims of Child Sexual Abuse Are to Be Revived .................................................................................13

    B.  Legislative Intent That a Statute Revives Previously Time-Barred Claims Must Control Unless the Courts Determine the Statute is Unconstitutional...........................................16

    1.  Utah Code Ann. § 78B–2–308, as Amended, Is Constitutionally Sound. .........................19

        a.  Roberts Has Not Challenged the Constitutionality of Utah Code Ann. § 78B–2–308, as Amended by House Bill 279 (2016)....................................................................19

        b.  Utah Code Ann. § 78B–2–308, as Amended by House Bill 279 (2016), Comports with Due Process...........................................................................................19

i

      i.      The Applicable Analysis Under Federal and State Substantive Due Process Is the Rational Basis Test...................................................................................19

      ii.     The Amendment to Utah Code Ann. § 78B–2–308 by House Bill 279 is Rationally Related to the State of Utah's Legitimate Interest in Providing Greater Justice for Victims of Child Sexual Abuse and Holding Perpetrators Accountable Through the Revival of Claims of Child Sexual Abuse That Otherwise May Be Time-Barred......................................................................20

III.    IF THERE IS ANY DOUBT ABOUT THIS COURT'S DUTY TO GIVE EFFECT TO THE STATUTE INTENDED TO REVIVE PREVIOUSLY TIME-BARRED CLAIMS AGAINST CHILD SEXUAL ABUSERS, THIS CRUCIAL QUESTION OF STATE LAW SHOULD BE CERTIFIED FOR DETERMINATION BY THE UTAH SUPREME COURT......................................................................................22

      1.    The Utah Supreme Court Has Not Yet Resolved the Precise Question of Whether the Courts Must Give Effect to the Clearly Stated Legislative Intent in House Bill 279 That the Current Applicable Statute of Limitations Revives Previously Time-Barred Claims of Child Sexual Abuse.................................................................23

      2.    Decisions by the Utah Supreme Court Are Inconsistent—Or at Least Some Are Incomplete—Regarding the Duty of the Courts to Give Effect to Legislative Intent That a Statute Revives Previously Time-Barred Claims. ......................................23

IV.    WHILE THERE IS NOT A SEPARATE CAUSE OF ACTION FOR "CHILD SEXUAL ABUSE" IN UTAH, A VICTIM WHO WAS A CHILD WHEN SEXUALLY ABUSED HAS REVIVED CLAIMS NOW FOR ASSAULT, BATTERY, INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND FALSE IMPRISONMENT............................................................26

CONCLUSION.....................................................................................................27

APPENDICIES .....................................................................................................28

    APPENDIX A ...............................................................................78–B–308 Statute

    APPENDIX B ..................................H.B. 279 Statute of Limitations Reform Amendments

    APPENDIX C .......................................................................Declaration of Linda Nelford

      EXHIBIT 1................................................................House Floor Debate Transcription

      EXHIBIT 2.................................................................. Senate Floor Debate Transcription

# TABLE OF AUTHORITIES

## Cases

*A.K.H. v. R.C.T.*, 822 P.2d 136 (Or. 1991) ................................................................ 26

*Bernstein v. Sullivan*, 914 F.2d 1395 (10th Cir. 1990) ............................................... 21

*Boyd Rosene & Assoc., Inc. v. Kansas Municipal Gas Agency,* 174 F.3d 1115 (10th Cir. 1999).. 4

*Brown & Root Indus. Serv. v. Indus. Comm'n*, 947 P.2d 671 (Utah 1997)................................ 7, 8

*Cache County v. Property Tax Div.,* 922 P.2d 758 (Utah 1996) ................................... 5

*Del Monte Corp. v. Moore*, 580 P.2d 224 (Utah 1978) ............................................... 25

*Deutsch v. Masonic Homes of Cal., Inc.*, 80 Cal.Rptr.3d 368 (Cal. Ct. App. 2008) ................... 22

*Doe v. Roe*, 20 A.3d 787 (Md. Ct. App. 2011) ........................................................... 26

*Evans & Sutherland Computer Corp. v. State Tax Comm'n*, 953 P.2d 435 (Utah 1997) ......... 8, 10

*Evans v. State,* 963 P.2d 177 (Utah 1998) ................................................................ 11

*Fernandez v. Immigration & Naturalization Service*, 113 F.3d 1151 (10th Cir. 1997) ............... 4

*Frideres v. Schiltz*, 540 N.W.2d 261 (Iowa 1995) ..................................................... 26

*Hardwicke v. American Boychoir School,* 902 A.2d 900 (N.J. 2006) ............................... 26

*Horne v. Horne*, 737 P.2d 244 (Utah Ct. App. 1987) ................................................. 3

*Hymowitz v. Eli Lilly & Co.*, 539 N.E.2d 1069 (N.Y. 1989) ......................................... 22

*I.N.S. v. Chadha*, 462 U.S. 919 (1983) ................................................................. 3, 16

*In re Individual 35W Bridge Litig.,* 806 N.W.2d 820 (Minn. 2011)................................. 22

*In re Ingraham's Estate*, 148 P.2d 340 (Utah 1944) .................................................. 8

*In re Young*, 1999 UT 6, 976 P.2d 581 ................................................................. 17

*Ireland v. Mackintosh*, 22 Utah 296, 61 P. 901 (1900)............................................... 8

*Johnson v. Lilly*, 823 S.W.2d 883 (Ark. 1992) ....................................................... 6

*Judd v. Drezga*, 2004 UT 91, 103 P.3d 135.............................................................. 20

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994)................................................. 4

*Madsen v. Borthick*, 769 P.2d 245 (Utah 1988)..................................................... 5, 7, 18

*Maw v. Lee*, 157 P.2d 585 (Utah 1945) ................................................................. 3

*McCarrey v. Utah State Teachers' Retirement Bd.*, 177 P.2d 725 (Utah 1947) .................... 8

*O'Donoghue v. United States*, 289 U.S. 516 (1933) ................................................... 17

*Olsen v. Hooley*, 865 P.2d 1345 (Utah 1993) ......................................................... 26

*Overmiller v. D.E. Horn & Co.*, 159 A.2d 245 (Pa. Super. Ct. 1960) ............................... 6

*Pryber v. Marriott Corporation*, 296 N.W.2d 597 (Mich. App. 1980) ........................... 22

*Quarry v. Doe I*, 53 Cal.4th 945 (Cal. 2012) ......................................................... 22

*Rampton v. Barlow,* 23 Utah 2d 383, 464 P.2d 378 (1970) ......................................... 17

*Rhodes v. Cannon*, 164 S.W. 752 (Ark. 1914) ......................................................... 6

*Roark v. Crabtree*, 893 P.2d 1058 (Utah 1995)........................................ 5, 6, 8, 9, 18, 24, 25, 26

*Roe v. Doe*, 581 P.2d 310 (Haw. 1978) ................................................................. 6, 22

*Satterlee v. Matthewson,* 27 U.S. 380 (1829) ......................................................... 21

*Sheehan v. Oblates of St. Francis De Sales*, 15 A.3d 1247 (Del. 2011)................................ 18, 22

*Shirley v. Reif*, 920 P.2d 405 (Kan. 1996) ............................................................. 22

*Sinclair Refining Co. v. Atkinson*, 370 U.S. 195 (1962) ...................................................... 3
*State ex rel. Kirby v. Jacoby*, 1999 UT App 52, 975 P.2d 939 .................................... 7, 18
*State of Utah v. Angilau*, 2011 UT 3, 245 P.3d 745 ............................................................ 20
*State v. Gallegos*, 2007 UT 81, 171 P.3d 426 .................................................................... 12
*State v. Lusk*, 2001 UT 102, 37 P.3d 1103 .................................................................5, 7, 18
*Stewart v. Keyes*, 295 U.S. 403 (1935) ................................................................................ 6
*Turner v. Staker & Parson Companies*, 2012 UT 30, 284 P.3d 600 .............................. 3
*U.S. Home Corp. v. Zimmerman Stucco & Plaster, Inc.*., 749 N.W.2d 98 (Minn. Ct. App. 2008)
..................................................................................................................................... 22
*Union Pac. R. Co. v. Trustees, Inc.*, 329 P.2d 398 (Utah 1958) .................................... 8
*United States v. Hodges*, 1993 WL 328044 (E.D. Mo. 1993) ........................................ 22
*United States v. McLaughlin*, 7 F.Supp.2d 90 (D. Mass. 1998) ................................... 22
*Utah Light & Traction Co. v. State Tax Com'n*, 68 P.2d 759 (Utah 1937).................................... 3
*Waddoups v. Noorda*, 2013 UT 64, 321 P.3d 1108 ..................................................... 2, 10
*Wasatch County v. Okelberry*, 2015 UT App 192, 357 P.3d 586................................ 10
*Wesley Theological Seminary of the United Methodist Church v. United States Gypsum Co.*, 876
F.2d 119 (D.C. Cir. 1989)............................................................................................ 21

**Statutes**

28 U.S.C. §2403 ................................................................................................................. 19
Utah Code Ann. § 68-3-3 ............................................................................................... 7, 8
Utah Code Ann. § 78B-2-308 ........................................ 2, 6, 11, 12, 13, 19, 20, 23, 26
Utah Code Ann. § 78B-2-308(1) ...................................................................................... 20
Utah Code Ann. § 78B-2-308(2)(g) and (a)................................................................... 12
Utah Code Ann. § 78B-2-308(7) ...................................................................................... 13

**Rules**

Rule 41, Utah Rules of Appellate Procedure ................................................................. 23
Rule 5.1 (b), Federal Rules of Civil Procedure.............................................................. 19
Rule 5.1(a)(1) and (2), Federal Rules of Civil Procedure ............................................ 19
Rule 41(c)(1)(B)-(C), Utah Rules of Appellate Procedure ........................................... 23

**Constitutional Provisions**

Utah Const. art. V, section 1 ............................................................................................ 17

**Periodicals**

"More Time For Justice" (Editorial), *The New York Times*, May 6, 2012. ................................. 21
Carrie Johnson, "Federal Judge Retires As 'Bad Lapse in Judgment' With 16-Year-Old
Surfaces," NPR ............................................................................................................... 1

**Books**

CHARLES DE SECONDAT, BARON DE MONTESQUIEU, THE SPIRIT OF LAWS 173 (Thomas Nugent trans. 1752) (Batoche Books 2001) (1748)................................................................. 16

**House Bill**

House Bill 279 ..................................................................... 3, 7, 11, 12, 13, 16, 19, 20, 21, 23, 26

**Legislative Debates**

Senate Floor Debate on House Bill 279 (Substitute 2) ................................................................. 15
House Floor Debate on House Bill 279 (Substitute 2) ................................................................. 13

## INTRODUCTION

Defendant Richard Roberts ("Roberts"), for his own self-gratification, caused untold tragedy by—as he has admitted[1]—engaging in child sex abuse[2] with Plaintiff Terry Mitchell ("Mitchell"). He abhorrently and immorally abused his position of trust as a prosecutor for the United States Department of Justice by sexually abusing Mitchell, a 16-year-old witness in a case Roberts prosecuted against Joseph Paul Franklin ("Franklin"), the killer of Mitchell's two friends.

Now, Roberts seeks to avoid accountability and any semblance of justice for Mitchell, arguing that Mitchell's claims are barred by statutes of limitations, notwithstanding that the Utah Legislature expressly revived claims for child sexual abuse that otherwise would be time-barred.

Remarkably, Roberts, formerly Chief Judge of the United States District Court for the District of Columbia, asserts that this Court can simply disregard constitutional laws passed by the legislative branch. That is a call for an unconstitutional judicial veto of legislation completely at odds with the separation of powers among the three branches of government and the system of checks and balances underlying a constitutional republic.

---

[1] Defendant Richard W. Roberts' Motion to Dismiss the Complaint ("Roberts's Motion"), at 4. Defendant admits to an "intimate" relationship with Mitchell when he was a Department of Justice Prosecutor and when Mitchell was a 16-year-old witness in a case Roberts was prosecuting.

[2] Roberts and his lawyers seek to downplay his sexual misconduct with Mitchell when she was a young girl and a witness in a case he was prosecuting. He and his counsel characterize his sexual abuse of a sixteen-year-old girl who testified in a case Roberts was prosecuting as being "consensual" (Roberts's Motion at 4) and simply a "bad lapse in judgment." *See, e.g.,* Carrie Johnson, "Federal Judge Retires As 'Bad Lapse in Judgment' With 16-Year-Old Surfaces," NPR, March 18, 2016, found at http://www.npr.org/2016/03/18/470852225/federal-judge-retires-as-bad-lapse-in-judgment-with-16-year-old-surfaces. No matter how Roberts and his legal counsel seek to trivialize Roberts's sexual outrages and depraved professional misconduct, each of the many instances constitutes "sexual abuse" of a "child" within the meaning of Utah Code Ann. § 78B-2-308, as amended by House Bill 279, 2016 General Session, a copy of which is attached as Appendix "A".

Any question in this case about a possible time bar is answered conclusively by the current version of Utah Code Ann. § 78B-2-308, which revives previously time-barred claims of child sexual abuse. Instead of meaningfully addressing the effect of that dispositive revival statute, Roberts relies entirely on statements about statutory construction relevant only when the Legislature has not expressed an intent about the retroactivity of a statute.

Roberts urges this Court to disregard the statutory revival of Mitchell's claims clearly intended to be accomplished by the Utah Legislature.[3] Such judicial disregard of the Utah Legislature's intent would reflect an astounding expansion of the exercise of judicial review, in which this Court would be substituting its view of the wisdom of legislation for that of the legislative branch.

Roberts would have this Court (1) ignore the fundamental rule that a previously time-barred claim can indeed be revived—even if it means enlarging or eliminating "vested rights"—when the Legislature expresses its intent that such a claim be revived;[4] and (2) disregard the statutory findings and the statement of intent expressed by the Utah Legislature that claims such as Mitchell's against Roberts, even if previously time-barred by a statute of limitations, be revived to permit Mitchell to seek justice in the courts for Roberts's child sexual abuse.

---

[3] Roberts's Motion, at 8–14.

[4] *See, e.g., Waddoups v. Noorda*, 2013 UT 64, ¶ 6, 8, 321 P.3d 1108, where the Utah Supreme Court explicitly held that an "exception" to the prohibition against retroactive application of "[l]aws that 'enlarge, eliminate, or destroy vested or contractual rights'" is if the Legislature has expressed its intent that the statute is to be applied retroactively. "'The intent to have a statute operate retroactively may be indicated by explicit [statutory] statements' to that effect, 'or by clear and unavoidable implication that the statute operates on events already past.'" *Id*. ¶ 6 (citations omitted).

## ARGUMENT

I.    **IF THE LEGISLATIVE BRANCH EXPRESSES ITS INTENT TO EXPAND OR ELIMINATE "VESTED" RIGHTS—AS THE UTAH LEGISLATURE DID IN THE PASSAGE OF HOUSE BILL 279— THE COURTS MUST GIVE EFFECT TO THE LEGISLATION UNLESS IT IS UNCONSTITUTIONAL.**

If legislation is constitutional, the courts must give effect to the expressed intention of the Legislature.

> We begin, of course, with the presumption that the challenged statute is valid. Its wisdom is not the concern of the courts; **if a challenged action does not violate the Constitution, it must be sustained:**
>
> > "**Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end.** We do not sit as a committee of review, nor are we vested with the power of veto." *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 194-195 (1978).[5]

The primary test as to whether constitutional legislation should be applied retroactively, regardless of whether such application would affect "vested" or "substantive" rights, is whether the Legislature expressed its intent that the legislation be applied retroactively. If it did, that is the end of the analysis. If it did not express such an intent, then the courts apply secondary "default"

---

[5] *I.N.S. v. Chadha*, 462 U.S. 919, 944 (1983) (emphasis added). *See also Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 215 (1962) ("In dealing with problems of interpretation and application of federal statutes, we have no power to change deliberate choices of legislative policy that Congress has made within its constitutional powers. Where congressional intent is discernable— and here it seems crystal clear—we must give effect to that intent."); *Turner v. Staker & Parson Companies*, 2012 UT 30, ¶ 12, 284 P.3d 600 ("When interpreting statutory language, our primary task is to give effect to the intent of the legislature."); *Horne v. Horne*, 737 P.2d 244, 247 (Utah Ct. App. 1987) ("The Utah Supreme Court has frequently stated that in construing legislative enactments, courts must give effect to the legislature's underlying intent."); *Maw v. Lee*, 157 P.2d 585, 589 (Utah 1945) ("[I]t is our duty to give effect, if such can be reasonably done, to every word, clause and sentence of a legislative enactment."); *Utah Light & Traction Co., v. State Tax Com'n*, 68 P.2d 759, 760 (Utah 1937) ("Our duty is to so construe the language of the statute, if possible, as to give effect to its obvious intention . . .").

rules of "statutory construction" to determine whether a statute should be applied retroactively—

that is, whether the statute is substantive and whether it affects "vested" rights.

Because courts cannot countermand legislation unless it is unconstitutional, the governing

rule is the same under federal and state law.

> When a case implicates a federal statute enacted after the events in suit, **the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules.** When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern **absent clear congressional intent favoring such a result.**[6]

If a statute is constitutional, legislative intent trumps any other consideration.

> **If the legislature has made its intent clear, a court need not even consider whether the statute should be classified as substantive or procedural. [Citing *Landgraf* at 280.] Only if the legislature's intent is not clear should a court consider whether the statute is substantive or procedural.** *See id.* at 275-80. The question *then* becomes whether the retroactive operation of the statute would alter the parties' vested rights. If the parties' vested rights would be affected, then the statute is substantive and will not be applied retroactively.[7]

The Utah Supreme Court has noted repeatedly that the consideration of whether "vested"

or "substantive" rights will be affected by the retroactive application of a statute is relevant solely

---

[6] *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994) (emphasis added).

[7] *Boyd Rosene & Assoc., Inc. v. Kansas Municipal Gas Agency,* 174 F.3d 1115, 1120 (10th Cir. 1999) (emphasis added). *See also Fernandez v. Immigration & Naturalization Service*, 113 F.3d 1151, 1153 (10th Cir. 1997) ("Because Congress has not 'expressly prescribed the … proper reach' of [a statute], we cannot simply read the statute to determine whether it applies to petitions pending on the date of its enactment. Rather, we must resort to 'judicial default rules,' under which there is a presumption against retroactive application of a statute that 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" (Citations omitted.)).

to a "rule of statutory construction" that is to be applied *only* in the absence of an expression of legislative intent. If the Legislature has expressed its intent that a statute is to be applied retroactively, that concludes the matter.

For instance, in a case relied on by Roberts (Roberts's Motion, at 12, 15), *State v. Lusk*,[8] the Utah Supreme Court simply applied a rule of "statutory construction" relevant only if the Legislature has not expressed its intent that the statute is to be applied retroactively. Quoting *Madsen v. Borthick*,[9] the Court in *Lusk* stated:

> It is a long-standing **rule of statutory construction** that a legislative enactment which alters the substantive law or affects vested rights will not be read to operate retrospectively **unless the legislature has clearly expressed that intention**.[10]

Roberts turns the proper statutory analysis on its head,[11] seeking to have this Court consider as the primary, determinative issue whether a statute affects "vested" or "substantive" rights. Roberts fails to recognize that such an issue is relevant solely with respect to a "default" rule of "statutory construction" to be applied *only* when the Legislature has *not* expressed its intent that the statute be applied retroactively. As one court has precisely stated the principle, "although courts often repeat the rule that 'subsequent extensions of a statutory limitation period will not revive a

---

[8] 2001 UT 102, 37 P.3d 1103.

[9] 769 P.2d 245, 253 (Utah 1988).

[10] *State v. Lusk,* 2001 UT 102, ¶ 27, 37 P.3d 1103 (quotation marks and citation omitted) (emphasis added). *See also Cache County v. Property Tax Div.,* 922 P.2d 758, 767 (Utah 1996) (citing the rule of "statutory construction" and noting "[t]he best evidence of the legislature's intent is the plain meaning of the statute"); *Roark v. Crabtree,* 893 P.2d 1058, 1061 (Utah 1995), (describing the "rule of statutory construction" to be applied "**unless** the legislature has clearly expressed [the] intention [that a statute is to operate retroactively].") (Emphasis added.) Roberts relies heavily upon *Roark,* Roberts's Motion, at 7, 9, 12, although *Roark* clearly provides that legislative intent as to retroactivity of a statute trumps the rule of statutory construction generally prohibiting retroactive application of a statute where "vested" rights are involved. *Roark v. Crabtree,* 893 P.2d at 1061.

[11] Roberts's Motion, at 9–14.

claim previously barred', the question remains one of legislative intent." *Roe v. Doe*, 581 P.2d 310,

316 (Haw. 1978).[12]

> **II.    THIS COURT MUST APPLY UTAH CODE ANN. § 78B-2-308 ACCORDING TO ITS EXPRESS TERMS AND THE CLEARLY STATED LEGISLATIVE INTENT THAT CLAIMS FOR CHILD SEXUAL ABUSE THAT WERE PREVIOUSLY TIME-BARRED BE REVIVED.**

---

[12] Roberts erroneously maintains that "Utah is among six states . . . that prohibit the retroactive expansion of the statute of limitations, to revive an otherwise time-lapsed claim, as an impermissible deprivation of a vested property right." Roberts's Motion, at 12. However, for that proposition, Roberts curiously cites to *Roark*, which, diametrically contrary to Roberts's contention, affirms that if "the legislature has clearly expressed that intention," a "legislative enactment which alters the substantive law or affects vested rights" will indeed "be read to operate retrospectively."   893 P.2d at 1061. The conclusion in *Roark*, declining to apply a statute retroactively, resulted because of findings by the Court that there was "no express declaration of retroactivity" in the statute, *id.*, and the legislative history, including a statement by the bill's co-sponsor that "[t]his [bill] is not retroactive," reflected a legislative intention that the bill was to be applied only prospectively. *Id.* at 1062.

Exactly the same analysis was provided in *Rhodes v. Cannon*, 164 S.W. 752, 753–54 (Ark. 1914), the case primarily relied upon, and misrepresented, by *Johnson v. Lilly* 823 S.W.2d 883 (Ark. 1992), cited in Roberts's Motion, 12–13. The court in *Johnson* entirely ignored the fact that *Rhodes* relied on cases holding that expressed legislative intent is controlling. For instance, *Rhodes* states: "It is a sound rule of construction that a statute should have a prospective operation only, **unless its terms show clearly a legislative intention that it should operate retrospectively**." 164 S.W. at 754 (quoting *Fayetteville B. & L. Ass'n v. Bowlin*, 63 Ark. 573, 39 S.W. 1046 (1897) (emphasis added)).

Roberts also cites to *Overmiller v. D.E. Horn & Co.*, 159 A.2d 245, 247–49 (Pa. Super. Ct. 1960) (Roberts's Motion, at 13) for the purported proposition that a time-barred claim cannot be revived by statute. However, *Overmiller* actually repeats at least twice the general rule that legislative intent supersedes the rule of statutory construction regarding retroactivity. *Id.* at 248. ("No law shall be construed to be retroactive **unless clearly and manifestly so intended by the Legislature**.") (inside quotation marks and citations omitted) (emphasis added).  *Overmiller* equivocally notes that "had the legislature made any such attempt [to revive claims which had been barred] there is authority to indicate that it would be unconstitutional." *Id.*  at 250. That statement is based on *Stewart v. Keyes*, 295 U.S. 403 (1935), a case dealing merely with whether the lifting of the bar of a statute of limitations in "an attempt **arbitrarily** to take [real or personal] property from one having a perfect title and to subject it to an extinguished claim of another" would be "to deprive him of his property without due process of law." *Id.* at 417. Of course, that case is wholly inapposite to this matter.

6

The Utah Legislature could not have made any clearer that previously time-barred claims of sexual abuse of a child are to be revived for a period of 35 years after the victim's eighteenth birthday or three years after the effective date of House Bill 279 (May 10, 2016), whichever is latest. Hence, the courts are duty-bound under our system of separation of power and checks and balances to apply the law as intended and unequivocally expressed by the Utah Legislature.

> **A. Utah Courts Apply a Statute Retroactively If (1) There Is a Clear Expression of Legislative Intent That the Statute Is to Be Applied Retroactively *or* (2) The Statute Is Procedural and Does Not Affect Vested Rights.**

The Utah Legislature has supplied the following rule regarding whether a statute is to be applied retroactively:

> A provision of the Utah Code is not retroactive, **unless the provision is expressly declared to be retroactive**.[13]

Consistent with that rule, Utah's appellate courts have reiterated many times over the course of more than a century that statutes are to be applied retroactively if the Legislature has made clear its intent the statutes are to be retroactively applied.

> "It is a long-standing rule of statutory construction that **a legislative enactment which alters the substantive law or affects vested rights will not be read to operate retrospectively unless the legislature has clearly expressed that intention**." *Madsen v. Borthick,* 769 P.2d 245, 253 (Utah 1988), *accord Evans & Sutherland Computer Corp. v. State Tax Comm'n*, 953 P.2d 435, 437 (Utah 1997); *Roark v. Crabtree*, 893 P.2d 1058, 1061 (Utah 1995). Nevertheless, where such specific legislative intent is absent, a statute may be applied retroactively if it is procedural in nature and does not enlarge or eliminate vested rights. *Evans & Sutherland*, 953 P.2d at 437–38; *see also Brown & Root Indus. Serv. v. Indus. Comm'n*, 947 P.2d 671, 675 (Utah 1997), *State ex rel. Kirby v. Jacoby*, 1999 UT App 52, ¶ 10, 975 P.2d 939.[14]

---

[13] Utah Code Ann. § 68-3-3 (emphasis added).
[14] *State v. Lusk*, 2001 UT 102, ¶ 27, 37 P.3d 1103 (emphasis added).

The two alternative rules of "statutory construction" were described by the Utah Supreme

Court as follows:

> Two rules of **statutory construction** are relevant to our assessment. One is the
> "long-standing rule of **statutory construction** that a legislative enactment which
> alters the substantive law . . . will not be read to operate retrospectively **unless the
> legislature has clearly expressed that intention**." [Citing *Madsen v. Borthick*, 769
> P.2d at 253]; *see also* Utah Code Ann. § 68-3-3. **The intent to have a statute
> operate retroactively may be indicated by explicit statements that the statute
> should be applied retroactively . . . or by clear and unavoidable implication
> that the statute operates on events already past.** *See* 82 C.J.S. *Statutes* § 414
> (1953). The second relevant rule of statutory construction, which is often referred
> to as an exception to the first, permits retroactive application "'where a statute
> changes only procedural law by providing a different mode or form of procedure
> for enforcing substantive rights'" without enlarging or eliminating vested rights.
> *Roark v. Crabtree*, 893 P.2d 1058, 1062 (Utah 1995) (quoting *Pilcher v. State*, 663
> P.2d 450, 455 (Utah 1983)) (additional citations omitted).[15]

---

[15] *Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n*, 953 P.2d 435, 437-38 (Utah
1998) (emphasis added). *See also State of Utah v. Jacoby*, 1999 UT App 52, ¶ 10, 975 P.2d 939
("A statute is presumed to be prospective and will not be applied retroactively **in the absence of
clear legislative intent** . . . or [unless] it is procedural in nature and does not enlarge or eliminate
vested rights."); *Brown & Root Indus. Serv. v. Indus. Comm'n*, 947 P.2d 671, 675 (Utah 1997)
("The general rule is that statutes are not applied retroactively **unless retroactive application is
expressly provided for by the legislature**." (Emphasis added.)); *Union Pac. R. Co. v. Trustees,
Inc.*, 329 P.2d 398, 399 (Utah 1958) ("As to any statutory question, Utah's policy demands the
inclusion of an **express authorization to justify any retrospective application of a statute**."
(Emphasis added.)); *McCarrey v. Utah State Teachers' Retirement Bd.*, 177 P.2d 725, 726 (Utah
1947) ("As said in 50 Am.Jur. 494, Statutes, Section 478: 'The question whether a statute operates
retrospectively, or prospectively only, is one of **legislative intent**. . . . [T]he general rule is that
[statutes] are to be . . . construed [prospectively] . . . **where the intention of the legislature to
make the statute retroactive is not stated in express terms**, or clearly, explicitly, positively,
unequivocally, unmistakably, and unambiguously shown by necessary implication or terms which
permit no other meaning to be annexed to them, preclude all question in regard thereto, and leave
no reasonable doubt thereof.'" (Emphasis added.)); *In re Ingraham's Estate*, 148 P.2d 340, 341
(Utah 1944) ("Constitutions, as well as statutes, should operate prospectively only, **unless the
words employed show a clear intention that they should have a retroactive effect**." (Citing
*Mercur Gold Mining & Milling Co. v. Spry, County Collector*, 16 Utah 222, 52 P.382, 284 (Utah
1898) (Emphasis added.)); *Ireland v. Mackintosh*, 22 Utah 296, 61 P. 901, 902 (1900) ("the object
which the statute was passed to attain should be kept in view, and **the construction which will
most effectually accomplish the purpose of the statute should be adopted**."(Emphasis added.))

Roberts relies heavily upon *State of Utah v. Apotex,*[16] where the Utah Supreme Court misleadingly stated "that once a cause of action expires, it may not be revived by statutory enactment"[17] and, citing (incompletely) to *Roark v. Crabtree,*[18] that "after a cause of action has become barred by the statute of limitations the defendant has a vested right to rely on that statute as a defense . . . which cannot be taken away by legislation . . . or by affirmative act, such as lengthening of the limitation period."[19]   In *Apotex*, the Utah Supreme Court ignored the primary test to be applied in determining whether a statute is to be applied retroactively—that is, whether the Legislature has clearly expressed its intent that the statute shall be applied retroactively.

In *Roark v. Crabtree*, the Utah Supreme Court, under a section of the opinion— completely ignored in *Apotex*—entitled "*Legislative Intent*,"[20] noted that a "legislative enactment which alters the substantive law or affects vested rights" *will* be applied retroactively if "the legislature has clearly expressed that intention." However, the Court found the statute under consideration in *Roark* "contains no express declaration of retroactivity" and "an examination of the legislative history of [the statute] reveals that the legislature did not intend for this section to apply retroactively."[21] Then, under a section of the opinion entitled "The Nature of Section 78-12-25.1,"[22] the Court continued to the next, completely different, secondary "default" test for determining if the statute should be applied retroactively. That test is an inquiry into whether the

---

[16] 2012 UT 36, 282 P.3d 66.
[17] *Id*. ¶ 64.
[18] 893 P.2d at 1063.
[19] *State of Utah v. Apotex*, 2012 UT 36, ¶ 67, 282 P.3d 66.
[20] 893 P.2d at 1061.
[21] *Id.*
[22] *Id*. at 1062.

statute is procedural or substantive in nature and whether a vested right would be affected.[23]

In a more recent opinion than *Apotex*, the Utah Supreme Court answered a question certified by the United States District Court for the District of Utah regarding retroactive application of statutes in *Waddoups v. Noorda.*[24] There the Court described "a single exception" to the "statutory bar against the retroactive application of newly codified laws."[25] The Utah Supreme Court reiterated the two established, dispositive tests to be applied: First, even where "vested or contractual rights" are enlarged, eliminated, or destroyed, retroactive effect is to be given a statute if the Legislature expressly declares the statute is to be retroactive.[26] "'The intent to have a statute operate retroactively may be indicated by explicit [statutory] statements' to that effect, 'or by clear and unavoidable implication that the statute operates on events already past.'"[27] Second, the Court stated as follows:

> Laws that "enlarge, eliminate, or destroy vested or contractual rights" are substantive and are barred from retroactive application **absent express legislative intent**. However, laws which merely pertain[ ] to and prescribe[ ] the practice and procedure or the legal machinery by which the substantive law is determined or made effective" are procedural and "may be given retrospective effect."[28]

---

[23] *Id.*

[24] 2013 UT 64, 321 P.3d 1108.

[25] *Id.* ¶ 6.

[26] *Id.*

[27] *Id.* (citing *Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n*, 953 P.2d 435, 437 (Utah 1997)).

[28] *Id.* ¶ 8 (emphasis added). *See also Wasatch County v. Okelberry*, 2015 UT App 192, 357 P.3d 586, where the Utah Court of Appeals set forth the identical primary rule—that "an amendment applies retroactively if 'the provision is expressly declared to be retroactive'" (citing Utah Code Ann. § 68–3–3)—and referred to a "narrow, judge-made exception to the retroactivity ban" not applicable here. *Id.* ¶ 17.

The Utah Supreme Court described the primary role of the courts in interpreting statutes:

> When we interpret statutes, our primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve.[29]

Consistent with the courts' circumscribed role in interpreting, and not making, statutory law, the courts must give retroactive effect to constitutional statutes reviving claims previously time-barred if the Legislature has made clear that result was intended by it. Since the *only* purpose and expressed intent of House Bill 279 was to provide a window of time in which previously time-barred claims of child sexual abuse would be revived, that effect must be honored by this Court.

### 1. The Utah Legislature Unambiguously Expressed Its Intent in the Text of the Statute That Claims for Sexual Abuse, Time-Barred as of July 1, 2016, Are to Be Revived.

House Bill 279[30] amended Utah Code Ann. § 78B-2-308[31] to read, in part, as follows:

(1) The Legislature finds that:
  (a) child sexual abuse is a crime that hurts the most vulnerable in our society and destroys lives;
  (b) research over the last 30 years has shown that it takes decades for children and adults to pull their lives back together and find the strength to face what happened to them;
  (c) often the abuse is compounded by the fact that the perpetrator is a member of the victim's family and when such abuse comes out, the victim is further stymied by the family's wish to avoid public embarrassment;
  (d) even when the abuse is not committed by a family member, the perpetrator is rarely a stranger and, if in a position of authority, often brings pressure to bear on the victim to insure silence;
  (e) in 1992, when the Legislature enacted the statute of limitations requiring victims to sue within four years of majority, society did not understand the long-lasting effects of abuse on the victim and that it take decades for the healing necessary for a victim to seek redress;

---

[29] *Evans v. State,* 963 P.2d 177, 184 (Utah 1998).

[30] A copy of House Bill 279, Substitute 2 (General Session 2016), is attached hereto as Appendix "B".

[31] A copy of current Utah Code Ann. § 78B-2-308, as amended by H.B. 279, 2016 General Session, is attached hereto as Appendix "A".

11

(f) the Legislature, as the policy-maker for the state, may take into consideration advances in medical science and understanding in revisiting policies and laws shown to be harmful to the citizens of this state rather than beneficial; and

(g) the Legislature has the authority to change old laws in the face of new information, and set new policies within the limits of due process, fairness, and justice.

*      *      *

(6) A civil action may be brought only against a living person who:

(a) intentionally perpetrated the sexual abuse;

(b) would be criminally responsible for the sexual abuse in accordance with Section 76-2-202; or

(c) negligently permitted the sexual abuse to occur.

(7) **A civil action against a person listed in Subsection (6)(a) or (b) for sexual abuse that was time barred as of July 1, 2016, may be brought within 35 years of the victim's 18th birthday, or within three years of the effective date of this Subsection (7), whichever is longer.** (Emphasis added.)

There can be no clearer statement of legislative intent than in House Bill 279 that a statute is intended to revive claims that were previously time-barred. Reinforcing that clear expression of intent is the title of § 78B-2-308: "Window for revival of time barred claims." "The title of a statute is not part of the text of a statute, and absent ambiguity, it is generally not used to determine a statute's intent. However, it is persuasive and can 'aid in ascertaining [the statute's] correct interpretation and application.'"[32]

In short, the unambiguous, unquestionable legislative intent, which must be given effect by the courts, is that if a person's claim that he/she was a victim of "sexual abuse"—defined as "acts or attempted acts of sexual intercourse, sodomy or molestation by an adult directed toward a child," where "child" is defined as "a person under 18 years of age,"[33]—has been time-barred, it is revived until "within 35 years of the victim's 18th birthday or within three years of the effective

---

[32] *State v. Gallegos*, 2007 UT 81, ¶ 16, 171 P.3d 426 (citing *Funk v. State Tax Comm'n*, 839 P.2d 818, 820 (Utah 1992) and *Young v. Barney*, 433 P.2d 846, 847 (Utah 1967)) (alteration in original).

[33] Utah Code Ann. § 78B-2-308(2)(g) and (a), respectively.

date" of the statute (May 10, 2016), "whichever is longer."[34]

    **2.   Consistent with the Text of the Current Statute of Limitations, The Legislative History of the Recent Amendment, as Well as a Public Video by Advocates for H.B. 279, Makes Clear the Utah Legislature Intended That Previously Time-Barred Claims of Child Sexual Abuse Are to Be Revived.**

    The legislative history of House Bill 279, amending Utah Code Ann. § 78B-2-308, leaves no doubt about the intent of the Utah Legislature in enacting the bill to revive previously time-barred claims involving sexual abuse of people under 18 years of age.

    During the House Floor Debate on House Bill 279 (Substitute 2), on February 26, 2016,[35] one of the sponsors of the bill, Representative Ken Ivory, stated, in part, as follows:

> This year we intend with HB 279 to move into the "good" category nationally in how we protect children from this heinous act of the sexual abuse of children.
>
>     What HB 277 did in eliminating the statute of limitations forward, created a limitation that as of March 23, 2015, anyone that was 22 or younger has no statute of limitations for sexual abuse of children. Anyone that was 22 years old and one day was still barred by time from bringing their claims.
>
>     We thought last year that that was enough. We thought that if we protected children going forward, we thought that going forward that would be a good step for the future. And, colleagues, after we passed that bill, I got calls almost every week, agonizing calls from all over our state, all over the nation in fact, from people who had lived in Utah as children, and they would tell me their horrifying story of their experiences as a child and then they would ask, "Does this 277 help me?" And I would ask them, "How old were you on March 23, 2015?" And, invariably, they were older than 22. And I would have to say, "No, I'm sorry. HB 277 does not help you."
>
>     I received calls like that every week, several times a week throughout the last year until November. I received a call from a woman in St. George who had a

---

[34] Utah Code Ann. § 78B-2-308(7).

[35] The House Floor Debate on February 26, 2016 on House Bill 279 (Substitute 2) can be viewed and heard by clicking on "HB279S2" on the left column on the page found at http://utahlegislature.granicus.com/MediaPlayer.php?clip_id=19980&meta_id=622136. A transcript of that House Floor Debate is attached as Exhibit "1" to the Declaration of Linda Nelford ("Nelford Declaration"), attached hereto as Appendix "C".

horrifying experience of her being abused, sexually abused, as a child and she asked the same question: "Does it help me?" And I said, "No, I'm sorry. . . and . . . and . . . but it will." And I immediately called leg. counsel and opened the file for HB 279.

What we've seen throughout the nation, **we've seen states opening what they call "windows," reviving the statute of limitations for these claims for a specific reason. What we've learned scientifically that we didn't know is that it takes decades for victims of sexual abuse of children to be able to process the shame, the embarrassment, the intimidation, the threats that were imposed upon them as children to be able to process and come forward and disclose the claim.**

Imagine you were a ten year-old who comes from a broken home, who doesn't fit in, starved for love and attention and affection and you have some trusted teacher or priest or parent or relative or neighbor that showers affection on you as a child, that is more intoxicating than oxygen, and the child would give anything to have that attention, and they build and groom that attention until they get to the point of taking inappropriate acts and then sexual acts and then abusive acts, but that attention is so strong and so hard and you have this person of trust telling them, "It's bad to tell, it's bad to tell," because of the shame, because of the fear, because of the intimidation, "it's bad to tell."

Well, now, scientifically we know that, on average—you have the handouts—on average, it takes them until age 41 for a child victim of sexual abuse to come forward and present . . . .

**So what HB 279 does, is, where we've already eliminated the statute of limitations going forward, we now deal with those who have been abused, that were older than 22 on March 23, and we put the statute of limitations of 18 plus 35 years that takes them out past the average age for reporting and allows them to revive their civil statute of limitations claims only against the perpetrator and only against the active aiders and abettors**. . . .

We had another woman testify in committee, who at age 10 was abused by her priest. She described in graphic detail. She is now 68 years old, 58 years later, was the first time that she was able to come forward and process those claims. It's not a matter of forgetting and repressed memory, it's the matter of the development of a child, where you have people in trust telling you, "It's bad to tell" and the shame and the intimidation that goes with that.

**With what we did in H.B. 277, we've eliminated that statute of limitations, but what we have now is we have this 20 year gap until we catch up to those who were in that gap, to allow them to report and to take those**

14

**perpetrators and disclose them publicly.** This doesn't change anything in the liability, it doesn't change anything in the burdens of proof. **What it does is take away a procedural defense for someone who has perpetrated these acts on children. In weighing that balance is clearly a matter of public policy in Utah. I think we want to err on the side of protecting children where a defendant may have a right procedurally for a claim that has lapsed. We have the opportunity to get our public policy right, and that's the basis behind H.B. 279,** Mr. Speaker Pro Tem. . . .

This [legislative intent language] is not new language. Our drafting attorney simply clarified some minor aspects of the language. This was what we heard in committee and it's included at the recommendation of . . . I spoke with Parker Douglas at the Attorney General's Office. The reason it's included in this bill . . . we wouldn't normally do that. In this instance, **our Supreme Court has said, if we are going to revive a civil statute of limitations, we need to, as a Legislature, to give a clear expression of intention for doing that, and so in this instance, that's why it's necessary in this bill, that we give a clear intention of reviving a statute of limitations.** (Emphasis added.)

During the Senate Floor Debate on House Bill 279 (Substitute 2),[36] Senator J. Stuart Adams

stated, in part, as follows:

Pre-1992, the statute of limitations for childhood sexual abuse was one year after someone turned 18. In 1992, they realized that that was too restrictive so they actually expanded it to four years after a minor turned 18. And in 2015, we eliminated the civil statute of limitations against predators, but it only applied to those that were younger than 22. And that was a problem as we realized that also limited it, so **with H.B. 279, it revises the statute of limitations for sexually abused children, and it extends it from . . . to 35 years after they turn 18, or within three years of the effective date of the bill**. . . .

[T]here's been studies, and the average age of someone actually, because of the trauma that happens when they're a child, coming forward is about the age of 42. So it's significantly after the age of 18, and many people don't share those experiences. They're very traumatic as we all understand. And that's why the age, the length of time is 35. . . .

---

[36] The Senate Floor Debate was on March 10, 2016. It can be viewed by visiting http://utahlegislature.granicus.com/MediaPlayer.php?clip_id=20232&meta_id=630469 and clicking on 2H.B. 279 on the left column. A transcript of that Senate Floor Debate is attached as Exhibit "2" to the Nelford Declaration (Appendix "C" hereto).

Yes, there's several other states that have adopted this and, in fact, they've actually used the same 35-year period of time.

As with the text of House Bill 279, the legislative history virtually screams out the intent of the Utah Legislature that previously time-barred claims of child sexual abuse be revived so victims over 22 years-old can pursue justice and the perpetrators be held to account.

A video presented to the public by advocates of House Bill 279, found at https://www.youtube.com/watch?v=HQhB48nA4iE, also makes clear that the purpose of the bill was to revive claims for child sexual abuse that may have been previously time-barred

## B. Legislative Intent That a Statute Revives Previously Time-Barred Claims Must Control Unless the Courts Determine the Statute Is Unconstitutional.

> *Again, there is no liberty, if the judiciary power be not separated from the legislative and executive. Were it joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control; for the judge would be then the legislator.*

- Montesquieu[37]

It is not for the courts to formulate legislation, weigh its effects, or evaluate the public policy considerations behind it. That is uniquely the province of the legislative branch, as long as the legislation meets constitutional requirements.

> The Constitution sought to divide the delegated powers of the new federal government into three defined categories, legislative, executive and judicial, to assure, as nearly as possible, that each Branch of government would confine itself to its assigned responsibility. The hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted.[38]

---

[37] CHARLES DE SECONDAT, BARON DE MONTESQUIEU, THE SPIRIT OF LAWS 173 (Thomas Nugent trans. 1752) (Batoche Books 2001) (1748).

[38] *I.N.S. v. Chadha*, 462 U.S. at 951.

16

The Utah Constitution expressly and emphatically requires a strict separation of power between the three branches of government:

> The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.[39]

The Utah Supreme Court has described the designation of legislative power:

> Legislators alone are charged with the exercise of the essential powers inherent in the very concept of the legislative branch—the power to vote on proposed laws. *See Tite v. State Tax Comm'n,* 89 Utah 404, 413, 57 P.2d 734, 738 (1936) (finding that only legislature has authority to pass laws fixing tax penalties); *see also Rampton v. Barlow,* 23 Utah 2d 383, 464 P.2d 378, 381 (1970) ("'Legislative power ... is the authority to make laws.'" (quoting *In re Opinion of Justices,* 302 Mass. 605, 19 N.E.2d 807 (1939))).[40]

The United States Supreme Court emphasized the crucial role in our constitutional republic of a separation of powers among the branches of government:

> The Constitution, in distributing the powers of government, creates three distinct and separate departments—the legislative, the executive, and the judicial. This separation is not merely a matter of convenience or of governmental mechanism. Its object is basic and vital; namely to preclude a commingling of these essentially different powers of government in the same hands. . . . If it be important thus to separate the several departments of government and restrict them to the exercise of their appointed powers, it follows, as a logical corollary, equally important, that each department should be kept completely independent of the others—independent not in the sense that they shall not co-operate to the common end of carrying into effect the purposes of the Constitution, but in the sense that the acts of each shall never be controlled by, or subjected, directly or indirectly, to, the coercive influence of either of the other departments.[41]

The Utah Legislature was acting entirely within its designated sphere to determine there is

---

[39] Utah Const. art. V, § 1.

[40] *In re Young*, 1999 UT 6, ¶ 9, 976 P.2d 581.

[41] *O'Donoghue v. United States,* 289 U.S. 516, 530 (1933).

a need to provide greater justice for victims of child sexual abuse, to fill a gap in access to justice for victims more than 22 years-old but who have not yet filed a civil action against the perpetrators, and to enact legislation that revives claims previously time-barred by relatively short statutes of limitations in order to hold perpetrators accountable. Clearly, the Legislature believed those previous statutes of limitations were unfair and ill-suited to claims that are so often extremely difficult, if not impossible, for victims of child sexual abuse to assert within the time allowed.

The intent so clearly expressed by the Legislature, in both the text of the statute and in the legislative history, cannot be judicially defeated merely on the basis of a purported, yet non-existent, court-created prohibition against the revival of time-barred claims. Such a prohibition would fly in the face of long-standing legal tests allowing for the retroactive application of statutes affecting "vested rights" when the Legislature has made clear its intent that the statute is to have such an effect.[42] Unless a statute is constitutionally infirm, the clear intent of the Legislature is to control the application of a statute.  Incomplete and inconsistent statements of purported court-made rules cannot be the basis for defeating the expressed intent of the Legislature.

The Supreme Court of Delaware powerfully stated the principle in a case involving the statutory revival of previously time-barred claims of child sexual abuse:

> [W]e do not sit as an überlegislature to eviscerate proper legislative enactments. It is beyond the province of courts to question the policy or wisdom of an otherwise valid law. Rather, we must take and apply the law as we find it . . . .[43]

---

[42] *See, e.g., State v. Lusk*, 2001 UT 102, ¶ 27, 37 P.3d 1103; *State of Utah v. Jacoby*, 1999 UT App 52, ¶ 10, 975 P.2d 939 ("A statute is presumed to be prospective and will not be applied retroactively **in the absence of clear legislative intent** *or* [unless] it is procedural in nature and does not enlarge or eliminate vested rights." (Emphasis added)); *Roark v. Crabtree,* 893 P.2d at 1061; *Madsen v. Borthick*, 769 P.2d at 253.

[43] *Sheehan v. Oblates of St. Francis De Sales*, 15 A.3d 1247, 1259 (Del. 2011).

1.      **Utah Code Ann. § 78B-2-308, as Amended, Is Constitutionally Sound.**

The statute passed by the Utah Legislature to revive claims of child sexual abuse that may previously have been time-barred is wholly constitutional. In fact, no constitutional challenge has been leveled against it.

   a.   **Roberts Has Not Challenged the Constitutionality of Utah Code Ann. § 78B-2-308, as Amended by House Bill 279 (2016).**

Roberts has not indicated in any way that the revival of previously time-barred claims of child sexual abuse intended by the Legislature and clearly reflected by § 78B-2-308, as amended by House Bill 279 (2016), is unconstitutional. Nor has Roberts filed a notice of constitutional question or served a notice and paper stating a question regarding the constitutionality of § 78B-2-308 on the Utah Attorney General, as required by Rule 5.1(a)(1) and (2), Fed. R. Civ. P. Nothing filed by or on behalf of Roberts gives this Court any reason to certify to the Utah Attorney General that a statute's constitutionality has been questioned, as provided by Rule 5.1(b), Fed. R. Civ. P. or 28 U.S.C. §2403.

   b.   **Utah Code Ann. § 78B-2-308, as Amended by House Bill 279 (2016), Comports with Due Process.**

      i.   **The Applicable Analysis Under Federal and State Substantive Due Process Is the Rational Basis Test.**

Roberts, an admitted child sexual abuser, who, as described in Mitchell's detailed allegations, threatened Mitchell to keep quiet about the abuse,[44] now seeks to escape legal accountability by hiding behind now-irrelevant statutes of limitations, arguing that § 78B-2-308,

---

[44] As Representative Ivory noted: "[Y]ou have this person of trust telling them, 'It's bad to tell, it's bad to tell,' because of the shame, because of the fear, because of the intimidation, 'it's bad to tell.' House Floor Debate on House Bill 279, *supra* at 14 and Exhibit "1" to Nelford Declaration (Appendix "C").

as amended by House Bill 279 (2016), cannot revive the claims of Mitchell against him, regardless of the clear intent of the Utah Legislature. That is hardly the makings of a "fundamental right." Hence, any due process analysis of the current § 78B-2-308 must be according to a rational basis test.

> "When undertaking a substantive due process analysis under both article I, section 7 of the Utah Constitution and the Fourteenth Amendment of the United States Constitution, this court applies a rational basis test unless the governmental action implicates a fundamental right or interest." *State v. Candedo*, 2010 UT 32, ¶ 16, 232 P.3d 1008. If there is no fundamental right at issue, "a statute will not violate substantive due process if it is rationally related to a legitimate state interest." *Id.* ¶ 19 (internal quotation marks omitted). "[O]ur rational basis analysis is limited to determin[ing] whether the legislature overstepped the bounds of its constitutional authority in enacting [the statute at issue,] not whether it made wise policy in doing so." *Id.* (alterations in original) (internal quotation marks omitted). This court will uphold a statue under the rational basis standard "if it has a reasonable relation to a proper legislative purpose, and [is] neither arbitrary nor discriminatory." *Id.* ¶ 24 (alterations in original) (internal quotation marks omitted).[45]

### ii. The Amendment to Utah Code Ann. § 78-2-308 by House Bill 279 is Rationally Related to the State of Utah's Legitimate Interest in Providing Greater Justice for Victims of Child Sexual Abuse and Holding Perpetrators Accountable Through the Revival of Claims of Child Sexual Abuse That Otherwise May Be Time-Barred.

Utah's legitimate interest in reviving claims of child sexual abuse is found compellingly expressed in the statement of legislative findings at Utah Code Ann. § 78B-2-308(1)[46] and in the statements of the sponsors of House Bill 279.[47] The recognition of that legitimate interest has not

---

[45] *State of Utah v. Angilau*, 2011 UT 3, ¶ 10, 245 P.3d 745. *See also Judd v. Drezga*, 2004 UT 91, ¶ 30, 103 P.3d 135 ("Generally, we apply a rational basis test in substantive due process cases.")
[46] *See supra,* at 11–12.
[47] *See supra,* at 13–16.

been limited to the legislatures and courts. For instance, *The New York Times* made the compelling

case for the revival of previously time-barred claims of child sexual abuse, as follows:

> Hawaii significantly strengthened its protections against child sexual abuse last month when Gov. Neil Abercrombie signed a measure extending the statute of limitations for civil lawsuits filed by child victims. At least as important, it opens a one-time two-year window to allow victims to file suits against their abusers even if the time limit had expired under the old law.

> Like similar laws in California and Delaware, the Hawaii measure recognizes some wrenching realities. It can take many years, even decades, before child abuse victims are emotionally ready to come forward and tell their stories in court. For example, many suits against the Catholic Church have been blocked because the church's covering up for pedophile priests made it hard for victims to come forward until long past the time limit for bringing civil claims.[48]

House Bill 279 was not only rationally related, but was necessary, to promote Utah's

interest in providing greater access to justice for victims of child sexual abuse whose claims against

the perpetrators were otherwise time-barred by obsolete statutes of limitations. Representative

Ivory concluded his presentation on the House Floor, after describing the pain and trauma

experienced by victims of child sexual abuse and the recent findings about the tremendous

obstacles faced by victims in pursuing their claims against perpetrators, as follows: "Maya

Angelou said we do the best that we can until we know better. And when we know better, we do

better." That is exactly the reason for House Bill 279, which is constitutional[49] and must be given

---

[48] "More Time For Justice" (Editorial), *The New York Times*, May 6, 2012.

[49] *See Satterlee v. Matthewson,* 27 U.S. 380, 413 (1829) ("If the effect of the statute in question, be not to impair the obligation of either of those contracts, . . . is there any other part of the constitution of the United States to which it is repugnant? It is said to be retrospective. Be it so; but retrospective laws which do not impair the obligation of contracts, or partake of the character of ex post fact laws, are not condemned or forbidden by any part of that instrument."); *Bernstein v. Sullivan*, 914 F.2d 1395, 1400 (10th Cir. 1990) (application of longer statute of limitations to person after claims were earlier time-barred is constitutional); *Wesley Theological Seminary of the United Methodist Church v. United States Gypsum Co.*, 876 F.2d 119, 121 (D.C. Cir. 1989) (**burden faced by retroactive legislation that revives claim previously barred by a statute of**

its clearly intended effect by the courts.

> **III.   IF THERE IS ANY DOUBT ABOUT THIS COURT'S DUTY TO GIVE EFFECT TO THE STATUTE INTENDED TO REVIVE PREVIOUSLY TIME-BARRED CLAIMS AGAINST CHILD SEXUAL ABUSERS, THIS CRUCIAL QUESTION OF STATE LAW SHOULD BE CERTIFIED FOR DETERMINATION BY THE UTAH SUPREME COURT.**

---

repose **"is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose."** (Emphasis added.)); *United States v. McLaughlin*, 7 F.Supp.2d 90 (D. Mass. 1998) (revival by Congress of previously time-barred claims for unpaid student loans held to comply with due process); *In re Individual 35W Bridge Litig.,* 806 N.W.2d 820 (Minn. 2011) (revival of claim previously barred by statute of repose, which created a "protectable property right," met due process requirement because it was rationally related to a legitimate state interest); *United States v. Hodges*, 1993 WL 328044 (E.D. Mo. 1993) (no due process violation; "the general rule is that extensions of a statutory limitations period will not revive a time barred claim. . . . However, **the general rule is inapplicable when the legislature intends that the statutory limitations period apply retroactively**." (Emphasis added.)); *Quarry v. Doe I,* 53 Cal.4th 945, 991 (Cal. 2012) (revival of claims for sexual abuse allowed where legislature expressed its intention); *Deutsch v. Masonic Homes of Cal., Inc.*, 80 Cal.Rptr.3d 368, 378-79 (Cal. Ct. App. 2008) (statute reviving claims of sexual abuse held to be constitutional, noting "it has been established law for over a century that a legislature may revive a civil claim that is barred by the statute of limitations") (citation omitted); *Sheehan v. Oblates of St. Francis De Sales*, 15 A.3d at 1258–60 (revival of intentional tort claims otherwise time-barred meets due process requirements); *Roe v. Doe*, 581 P.2d 310, 316 (Haw. 1978) (revival of time-barred claim held to be constitutional because "[a]lthough courts often repeat the rule that 'subsequent extensions of a statutory limitation period will not revive a claim previously barred', **the question remains one of legislative intent**."(Emphasis added.)); *Shirley v. Reif*, 920 P.2d 405 (Kan. 1996) (statute may, consistently with due process, revive previously time-barred claim of childhood sexual abuse); *Pryber v. Marriott Corporation*, 296 N.W.2d 597, 600 (Mich. App. 1980) ("Federal constitutional law on this issue" is that "[a]n act of state legislation which has the effect of lifting the bar of a statute of limitations so as to restore a remedy which has been lost through lapse of time is not per se violative of the Fourteenth Amendment to the United States Constitution. . . . The same conclusion obtains as a matter of state constitutional law. . . . The right to defeat a claim by the interposition of a statute of limitations is a right which may be removed by the Legislature."); *U.S. Home Corp. v. Zimmerman Stucco & Plaster, Inc.*. 749 N.W.2d 98, 101 (Minn. Ct. App. 2008) (holding that since legislative intent was clearly manifested, repeal of statute of repose was retroactively applied, reviving previously time-barred actions; "there can be no doubt that the legislature has the power to amend a statute of limitations to revive a claim that was already barred under the prior limitations period") (citation omitted); *Hymowitz v. Eli Lilly & Co.*, 539 N.E.2d 1069 (N.Y. 1989) (revival of previously time-barred claims meets federal and state constitutional muster).

Rule 41, Utah Rules of Appellate Procedure, provides a means for United States courts to certify a question of Utah law to the Utah Supreme Court if "the question certified is a controlling issue of law in a proceeding pending before the certifying court" and "there appears to be no controlling Utah law."[50]

1. **The Utah Supreme Court Has Not Yet Resolved the Precise Question of Whether the Courts Must Give Effect to the Clearly Stated Legislative Intent in House Bill 279 That the Current Applicable Statute of Limitations Revives Previously Time-Barred Claims of Child Sexual Abuse.**

The application of long-standing legal mandates that Utah courts must give effect to clearly stated legislative intent—even when "vested rights" or "substantive rights" are at issue—should be sufficient for this Court to find that the current applicable statute of limitations revives claims of child sexual abuse that would otherwise be time-barred. However, because House Bill 279 was only recently enacted (with an effective date of May 10, 2016), no Utah appellate court has yet ruled precisely regarding the effect the amendment to Utah Code Ann. § 78B-2-308 has on time-barred claims of child sexual abuse.

2. **Decisions by the Utah Supreme Court Are Inconsistent—Or at Least Some Are Incomplete—Regarding the Duty of the Courts to Give Effect to Legislative Intent That a Statute Revives Previously Time-Barred Claims.**

As noted above, *supra* at 7–11, Utah courts, including the Utah Supreme Court, have, for over a hundred years, applied the rule that a statute will be applied retroactively if (1) the Legislature has clearly expressed its intent that the statute will be applied retroactively, even if it enlarges or eliminates "vested rights," *or* (2) in the absence of a clear expression of legislative

---

[50] Utah R. App. P. 41(c)(1)(B)–(C).

intent, the statute is procedural and not substantive, not affecting "vested rights."  However, the

Utah Supreme Court has, at times, skipped over the first, primary test relating to legislative intent

and, mistakenly, focused exclusively on the secondary procedural/substantive test.

    For instance, in *State of Utah v. Apotex*,[51] the Utah Supreme Court completely ignored the

controlling factor of legislative intent, as described in *Roark v. Crabtree*,[52] as it focused solely,

and mistakenly, on the secondary alternative procedural/substantive test that relates merely to

statutory construction, as follows:

> The amended UFCA cannot resurrect claims that have already expired under the
> one-year limitations period. "[T]his court has consistently maintained that the
> defense of an expired statute of limitations is a vested right." *Roark v. Crabtree*,
> 893 P.2d 1058, 1062 (Utah 1995). "'Accordingly, after a cause of action has
> become barred by the statute of limitations the defendant *has a vested right to rely*
> *on that statute as a defense . . . which cannot be taken away by legislation . . . or*
> *by affirmative act, such as lengthening of the limitation period.'" Id.* at 1063
> (alterations in original) (quoting 51 AMJUR 2D *Limitation of Actions* §444
> (1970)).[53]

    The intent of the Legislature cannot so cavalierly be undermined by any court, particularly

when it purports to rely on *Roark*, yet ignores the entire section of *Roark* dedicated to the decisive

factor of "legislative intent."[54] A finding that a "vested right" is enlarged or eliminated is not the

end of the analysis, as mistakenly indicated in *Apotex*. Again, unless a statute is unconstitutional,

even if a "vested right" is enlarged or eliminated, the intent of the Legislature must be given effect

by the courts—not defeated by a court that ignores the controlling test of legislative intent and

blindly, and misleadingly, parrots sentences from a prior decision that have no application

---

[51] 2012 UT 36, 282 P.3d 66.
[52] 893 P.2d at 1061–62.
[53] *State of Utah v. Apotex*, 2012 UT 36, ¶ 67, 282 P.3d 66.
[54] *See Roark*, 892 P.2d at 1061–1062.

whatsoever when the Legislature has made clear its intent that a statute is to be given retroactive effect.

The Court in *Apotex* wholly ignored the section in *Roark* with the heading "*Legislative Intent*," and particularly the following statement of the controlling test:

> "It is a long-standing rule of statutory construction that a legislative enactment which alters the substantive law or affects vested rights will not be read to operate retrospectively **unless the legislature has clearly expressed that intention**."[55]

In *Apotex*, the Utah Supreme Court simply overlooked the vital last phrase: "unless the legislature has clearly expressed that intention."[56]   In *Soriano v. Graul*, the Utah Court of Appeals correctly notes that *Roark* examined "the legislative history in conjunction with the statute's plain language to determine if the legislature intended for the statute to apply retroactively."[57]

The mistaken, or incomplete, reading of its earlier decision in *Roark* by the Utah Supreme Court in *Apotex* should have no impact here on a determination that Utah law, for over a century, has required the courts to give retroactive effect to statutes—even those that enlarge or eliminate "vested rights"—when the Legislature has expressed its intent that such effect be given the statutes. Specifically, this Court is urged to deny Roberts's Motion to Dismiss in recognition of the long-established Utah law, and the prohibition against judicial review of constitutional legislation,

---

[55] *Roark*, 892 P.2d at 1061 (citing *Madsen v. Borthick*, 769 P.2d at 253) (emphasis added).
[56] Another instance of inattention by the Utah Supreme Court of the primary test of legislative intent regarding statutes that would revive previously time-barred claims is *Del Monte Corp. v. Moore*, 580 P.2d 224 (Utah 1978). There the Court abruptly noted "that if the statute has run on a cause of action, so that it is dead, it cannot be revived by any such statutory extension." *Id.* at 225. No consideration was given to the principle found in numerous cases, before and after *Del Monte*, that, even if "vested rights" are enlarged or eliminated, a statute can revive previously time-barred claims if the Legislature makes it clear that is its intention.
[57] 2008 UT App 188, ¶ 8, 186 P.3d 960.

requiring that the amendment of Utah Code Ann. § 78B-2-308, as amended by House Bill 279 (2016), be applied to give effect to the clear intent expressed by the Legislature.

However, if this Court finds there is a significant question as to whether legislative intent is to be given effect by the courts in the application of the revival statute at issue here, this matter should be certified for a decision of Utah law by the Utah Supreme Court.[58]

**IV.   WHILE THERE IS NOT A SEPARATE CAUSE OF ACTION FOR "CHILD SEXUAL ABUSE" IN UTAH, A VICTIM WHO WAS A CHILD WHEN SEXUALLY ABUSED HAS REVIVED CLAIMS NOW FOR ASSAULT, BATTERY, INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND FALSE IMPRISONMENT.**

Utah Code Ann. § 78B-2-308, as amended by House Bill 279 (2016), revives claims for assault, battery, intentional and negligent infliction of emotional distress, and false imprisonment that were previously time-barred if such claims arose out of child sexual abuse.[59]

---

[58] *See, e.g., A.K.H. v. R.C.T.*, 822 P.2d 136, 137 (Or. 1991) (en banc) (federal court certified question to Oregon Supreme Court as to whether a child sex abuse statute applied to actions previously barred by statutes of limitation; the Court answered "Yes").

[59] *See, e.g., Roark, 893 P.2d at 1063* (statute of limitations relating to claims of child sexual abuse applied to claims of assault and battery and intentional infliction of emotional distress—"claims arising out of" "sexual abuse"); *Olsen v. Hooley*, 865 P.2d 1345, 1346–47 (Utah 1993) (in action for sexual abuse, claims for "an intentional tort," as well as for "intentional infliction of emotional distress" could be pursued if within the statute of limitations). *See also Frideres v. Schiltz*, 540 N.W.2d 261, 267–68 (Iowa 1995) (answering a question certified by the United States District Court, held that statutory reference to actions for "injuries suffered as a result of sexual abuse" encompasses any claims causally connected to sexual abuse, including assault, battery, and intentional infliction of emotional distress); *Doe v. Roe*, 20 A.3d 787, 789, 799 (Md. Ct. App. 2011) (claims of "sexual abuse that occurred while the victim was a minor" include counts of battery, false imprisonment, and intentional infliction of emotional distress); *Hardwicke v. American Boychoir School*, 902 A.2d 900, 909, 919 (N.J. 2006) (statute of limitations reference to "civil action for injury or illness based on sexual abuse" encompasses "any common-law claims based on conduct that falls within the definition of sexual abuse," including assault, battery, and intentional infliction of emotional distress).

## CONCLUSION

This case involves exactly the kind of horrific situation the Utah Legislature sought to remedy, in part, by providing an opportunity for some semblance of justice for victims of child sexual abuse and accountability for perpetrators when claims sought to be pursued by victims of child sexual abuse would otherwise be time-barred. This Court's role in this case is to give effect to the expressed intent of the Utah Legislature. Mitchell must be permitted to pursue her claims for assault, battery, intentional and negligent infliction of emotional distress, and false imprisonment against Roberts for his outrageous sexual abuse of Mitchell. That abuse occurred when, ironically, Roberts was a prosecutor for the United States Department of Justice, and Mitchell was a sixteen-year-old witness in a case being prosecuted by him, who was subjected by Roberts to repeated sexual abuse after Mitchell had previously experienced years of incest, a violent rape, and the killings of her two friends when she was with them.

It occurred a long time ago, but the tragic circumstances have been calling out for justice ever since. Answering that call is the express, noble purpose of Utah's revival statute. That purpose must be given effect by this Court's denial of Roberts's Motion to Dismiss.


DATED this 27th day of September, 2016.

**LEWIS HANSEN**


/s/ Ross C. Anderson

Ross C. Anderson
Attorneys for Plaintiff