Ross C. Anderson (#0109)
LEWIS HANSEN
The Judge Building
Eight East Broadway, Suite 410
Salt Lake City, Utah 84111
Telephone: (801) 746-6300
Fax: (801) 746-6301
randerson@lewishansen.com

*Counsel for Terry Mitchell*

_____

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION
_____

| | |
|---|---|
| TERRY MITCHELL,<br><br>*Plaintiff,*<br><br>v.<br><br>RICHARD WARREN ROBERTS,<br><br>*Defendant.* | **PLAINTIFF'S PROPOSED CERTIFIED QUESTIONS AND RELEVANT FACTS**<br><br>Case No. 2:16–cv–00843–EJF<br>Magistrate Judge Evelyn J. Furse |

## STIPULATED CERTIFIED QUESTIONS

Plaintiff Terry Mitchell ("Mitchell"), through her undersigned counsel, respectfully submits the following proposed certified questions in accordance with the Court's Memorandum Decision and Order to Submit Proposed Question for Certification (ECF No. 29) ("Court's Order"):

1. If a statute enacted by the Utah Legislature is constitutional, can it be rendered without effect by the courts because the statute enlarges, eliminates, or destroys vested or contractual rights?

2. Can Utah Code section 78B–2–308 revive claims for child sexual abuse when the claims were barred by the previously applicable statute of limitations as of July 1, 2016, and the Utah Legislature expressed its intention in enacting section 78B–2–308 that such time-barred claims be revived for a period of time?

Pursuant to Utah Rule of Appellate Procedure 41(c)(2), the certification order must "set forth all facts which are relevant to the determination of the question certified and which show the nature of the controversy, the context in which the question arose, and the procedural steps by which the question was framed." Mitchell's counsel contends that only the proposed question(s) to be certified were requested by the Court (Court's Order (ECF No. 29), 3) and that no more should be proffered to the Court by counsel, particularly since the Court has already carefully explained the factual and procedural context in the Court's Order (ECF No. 29).

However, counsel for Defendant Richard Roberts ("Roberts") has contended that the parties should submit a proposed statement of facts for the Court's consideration. If the Court seeks a proposed statement of facts, the following (which is mostly repeated from the Court's Order) is proffered by Mitchell as a recitation of the relevant facts and other matters, pursuant to Rule 41, Utah Rules of Appellate Procedure:[1]

### RELEVANT FACTS

On July 29, 2016, Mitchell filed a Complaint against Roberts alleging assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment. *See* Complaint (ECF No. 2), a copy of which is attached to the proposed Request to Answer Certified Questions as Exhibit "A".) Mitchell alleges in the Complaint that, during 1981, Roberts, then a 27-year-old prosecutor in a case in which then-16-year-old Mitchell testified as an eye-witness, committed child sexual abuse (including molestation (as defined in Utah Code

---

[1] A proposed Request Addressed to the Utah Supreme Court to Answer Certified Questions of Utah Law ("Request to Answer Certified Questions"), incorporating the language of this submission and including as exhibits the Complaint (ECF No. 2), Roberts's Motion to Dismiss the Complaint (ECF No. 9), and Mitchell's Memorandum in Opposition to the Motion to Dismiss (ECF No. 12), is filed herewith and an editable Word version will be emailed to the Court's chambers.

section 78B–2–308(2)(d)), sodomy, and sexual intercourse) within the meaning of the term "sexual abuse" in Utah Code section 78B–2–308, against Mitchell, against her will and without her consent. *Id.* at ¶¶ 5, 15, 21, 22, 26, 28, 29, 34–35. Roberts alleges that he and Mitchell had a "brief, consensual intimate relationship" after Mitchell's role in the trial ended and alleges that Mitchell's allegations are "perplexing and demonstrably false." Defendant Richard W. Roberts' Motion to Dismiss the Complaint (ECF No. 9) ("Mot."), a copy of which is attached to the proposed Request to Answer Certified Questions as Exhibit "B", at 4.

Mitchell alleges in her Complaint that Mitchell's civil action for the child sexual abuse described in the Complaint "was time-barred as of July 1, 2016, and is now revived and can be brought against Roberts within three years of May 10, 2016, the effective date of Utah Code section 78B–2–308, as amended by H.B. 279 (General Session 2016), or within 35 years of Mitchell's eighteenth birthday, as provided in the current version of Utah Code section 78B–2–308." Complaint, ¶ 36. Amended Utah Code section 78B–2–308 provides in relevant part: "A civil action against a person [accused of sexual abuse against a child] that was time barred as of July 1, 2016, may be brought within 35 years of the victim's 18th birthday, or within three years of the effective date of this Subsection (7), whichever is longer." Utah Code section 78B–2–308(7). Amended Utah Code section 78B–2–308 defines "sexual abuse" as "acts or attempted acts of sexual intercourse, sodomy, or molestation by an adult directed towards a child." Utah Code section 78B–2–308(2)(g). "Child" is defined as "a person under 18 years of age." Utah Code section 78B–2–308(2)(a).

House Bill 279 amended Utah Code section 78B–2–308 to read, in part, as follows:
(1) The Legislature finds that:
    (a) child sexual abuse is a crime that hurts the most vulnerable in our society and destroys lives;

3

 (b) research over the last 30 years has shown that it takes decades for children and adults to pull their lives back together and find the strength to face what happened to them;
 (c) often the abuse is compounded by the fact that the perpetrator is a member of the victim's family and when such abuse comes out, the victim is further stymied by the family's wish to avoid public embarrassment;
 (d) even when the abuse is not committed by a family member, the perpetrator is rarely a stranger and, if in a position of authority, often brings pressure to bear on the victim to insure silence;
 (e) in 1992, when the Legislature enacted the statute of limitations requiring victims to sue within four years of majority, society did not understand the long lasting effects of abuse on the victim and that it take decades for the healing necessary for a victim to seek redress;
 (f) the Legislature, as the policy-maker for the state, may take into consideration advances in medical science and understanding in revisiting policies and laws shown to be harmful to the citizens of this state rather than beneficial; and
 (g) the Legislature has the authority to change old laws in the face of new information, and set new policies within the limits of due process, fairness, and justice.

The title of § 78B–2–308 is "Window for revival of time barred claims." Also, statements on the floors of the Utah State Senate and Utah House of Representatives noted the intent of H.B. 279 was to revive claims of child sexual abuse that had been time barred as of July 1, 2016. House Floor Debate on House Bill 279 (Substitute 2), February 26, 2016, (comments of Representative Ken Ivory) and Senate Floor Debate on House Bill 279 (Substitute 2), March 10, 2016 (comments of Senator J. Stuart Adams).

Roberts has moved the Court to dismiss Mitchell's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which this Court can grant relief. (Mot.) Mr. Roberts argues the statute of limitations bars Ms. Mitchell's claims. (Mot, 2.) Mitchell maintains Utah Code section 78B–2–308 as amended on May 10, 2016, revives her time-barred claims. (Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Opp'n") (ECF No. 12) a copy of which is attached to the proposed Request to Answer Certified Questions as Exhibit "C", at 2. Having

reviewed the parties' briefing on Roberts's Motion to Dismiss, the Court concludes Utah law is unclear as to whether the legislature may expressly revive time-barred claims. Accordingly, this Court finds certification of the state law questions presented by this case to the Utah Supreme Court pursuant to Rule 41 of the Utah Rules of Appellate Procedure appropriate.

Roberts cites *State v. Apotex Corp.*, 2012 UT 36, 282 P.3d 66, for the proposition that the legislature cannot expressly revive time-barred claims. (Mot. (ECF No. 9), 10.) However, in *Apotex*, the Utah Supreme Court did not address whether the statute in question contained an express declaration of retroactivity, despite the State's raising the issue. 2012 UT 36, ¶¶ 63–67. Historically, Utah courts have considered "[t]wo rules of statutory construction . . . relevant to" retroactive operation. *Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n*, 953 P.2d 435, 437 (Utah 1997). "One is the 'long-standing rule of statutory construction that a legislative enactment which alters the substantive law . . . will not be read to operate retrospectively unless the legislature has clearly expressed that intention.'" *Id.* (quoting *Madsen v. Borthick*, 769 P.2d 245, 253 (Utah 1998)). "The second relevant rule of statutory construction, which is often referred to as an exception to the first, permits retroactive application 'where a statute changes only procedural law by providing a different mode or form of procedure for enforcing substantive rights' without enlarging or eliminating vested rights.'" *Id.* at 437–38 (quoting *Roark v. Crabtree*, 893 P.2d 1058, 1062 (Utah 1995)). "Traditionally, [the Utah Supreme Court has] begun [its] analysis by applying the first rule of statutory construction: Only when [it] conclude[s] that retroactive application is not permitted under that rule do[es] [it] consider whether the second rule of construction permits retroactive operation." *Id.* at 438.

Whether the *Apotex* decision abrogated the two-part test or merely skipped the first part of the test for some unexplained reason remains unclear.² Because Utah Code section 78B–2–308(7) expressly authorizes retroactive application, the first part of the traditional test would apply, and the Court would not consider whether the retroactive application affects vested rights. Therefore, whether the Utah Supreme Court intended to abandon the first part of the test becomes central to the determination of this case.

---

² This sentence varies from the text of the Court's Order. In discussing *Apotex*, instead of leaving only two explanations (neither of which necessarily apply) for what the Utah Supreme Court stated in *Apotex*—(1) abrogation of "the two-part test" or (2) skipping "the first part of the test because the statute in question did not necessarily include a clear statement of retroactivity" (see Court's Order, 2)—Mitchell has proposed a description of the possibilities in broader, more flexible language, including the possibility the Utah Supreme Court skipped the first test for "some unexplained reason." The Utah Supreme Court did *not* explain why it did not insist, as it always had before and since (and as Utah Code section 68–3–3 requires), that expressed legislative intent controls whether a statute affecting vested rights is to be applied retroactively. It is possible that the Utah Supreme Court simply made a mistake, reading a description of the rule to be applied in the *second*, default procedural/substantive test of statutory construction and erroneously applying it as if there were no *first*, primary "legislative intent" test. According to the Utah Supreme Court (even the Supreme Court of the Territory of Utah) for well over a century, when the first test is met—that is, when the legislature expresses its intent that a statute is to be applied retroactively—that is the end of the analysis and there is to be no resort to a second test. *See Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n*, 953 P.2d 435, 438 (Utah 1997) ("Only when we conclude that retroactive application is not permitted under [the *first*] rule [inquiring into whether there is an expressed legislative intent that a statute is to be applied retroactively] do we consider whether the *second* rule of construction [inquiring into whether the change in law relates only to procedure or to the enlargement or elimination of vested rights] permits retroactive operation.") (emphasis added). *See also Roark v. Crabtree*, 893 P.2d 1058, 1061 (Utah 1995) ("It is a long-standing rule of statutory construction that a legislative enactment which alters the substantive law or affects vested rights will not be read to operate retrospectively *unless the legislature has clearly expressed that intention*.") (emphasis added); *Ireland v. Mackintosh*, 61 P. 901, 904 (Utah 1900) (recognizing the power of the legislature, if it expresses its intention to do so, to "revive causes of action which had before the passage of [a new] act become barred"); *Farrell v. Pingree*, 5 Utah 443, 16 P.843, 845 (1888) ("[I]t is a sound rule of construction that a statute should have a prospective operation only, *unless its terms show clearly a legislative intention that it should operate retrospectively*.") (emphasis added) (quoting Thomas M. Cooley, A TREATISE ON THE CONSTITUTIONAL LIMITATIONS WHICH REST UPON THE LEGISLATIVE POWER OF THE STATES OF THE AMERICAN UNION (1868), 456).

Further, the Utah Supreme Court reiterated the two-part test one year after *Apotex* in *Waddoups v. Noorda*, 2013 UT 64, 321 P.3d 1108, making the effect of *Apotex* on the two-part test even more in doubt. In *Waddoups*, the court states that "[l]aws that 'enlarge, eliminate, or destroy vested or contractual rights' are substantive and are barred from retroactive application absent express legislative intent." 2013 UT 64, ¶ 8, (quoting *Brown & Root Indus. Serv. v. Indus. Comm'n*, 947 P.2d 671, 675 (Utah 1997)). However, the Utah Supreme Court did not apply the first part of the traditional test because the statute at issue did not expressly address retroactivity. *Id.* ¶¶ 9–10. Thus, the statement of the first part of the test remains dicta. Further, the court never mentions *Apotex*. Accordingly, this Court finds the applicable state of the law uncertain.

Pursuant to Rule 41(c)(3), Utah Rules of Appellate Procedure, the Court notes that the question raised here is of enormous significance to the system of checks and balances and separation of power among the branches of government because if a statute, which the Legislature clearly intended to be applied retroactively, is constitutional, the courts would be without authority to ignore or judicially repeal the statute, even if it would enlarge, eliminate, or destroy a vested or contractual right. That crucial issue was not addressed in *Apotex*, where the Utah Supreme Court stated that "after a cause of action has become barred by the statute of limitations the defendant has a vested right to rely on that statute as a defense . . . *which cannot be taken away by legislation . . . or by affirmative act, such as lengthening of the limitation period*." (emphasis added) (inside quotation marks omitted) (citation omitted). Here, Roberts has not challenged the constitutionality of Utah Code section 78B–2–308. (Mot.; Opp'n., 19.) If the rule that seems to have been suggested in *Apotex* were applied to a constitutional statute intended by the legislature to be applied retroactively, it would signify a momentous shift in the balance of power between the judicial and legislative branches of government. Hence, clarity is now sought from the Utah Supreme Court

7

regarding the retroactive application of a statute intended by the Utah Legislature to be applied retroactively.[3]

Pursuant to Utah Rule of Appellate Procedure 41(a), "[t]he Utah Supreme Court may answer a question of Utah law certified to it by a court of the United States . . . if the state of the law of Utah applicable to a proceeding before the certifying court is uncertain." Accordingly, this Court respectfully certifies the following questions to the Utah Supreme Court:

1. If a statute enacted by the Utah Legislature is constitutional, can it be rendered without effect by the courts because the statute enlarges, eliminates, or destroys vested or contractual rights?

2. Can Utah Code section 78B–2–308 revive claims for child sexual abuse when the claims were barred by the previously applicable statute of limitations as of July 1, 2016, and the Utah Legislature expressed its intention in enacting section 78B–2–308 that such time-barred claims be revived for a period of time?

Dated this 8th day of May, 2017:

/s/ Ross C. Anderson
Ross C. Anderson (#0109)
randerson@lewishansen.com
LEWIS HANSEN
The Judge Building
Eight East Broadway, Suite 410
Salt Lake City, Utah 84111
Telephone: (801) 746-6300
*Counsel for Terry Mitchell*

---

[3] Mitchell has included this paragraph to focus on the enormous significance of this matter inasmuch as the adoption of the rule that seems to have been stated in *Apotex* would portend an unprecedented shift in the system of checks and balances and separation of power between the judicial and legislative branches of government. Judicial review—the power of the courts to invalidate unconstitutional laws passed by the legislative branch—has never been expanded beyond the principle in *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137 (1803), that the "judicial department" must "say what the law is" and decide "if a law be in opposition to the *constitution*." 5 U.S. at 177–78 (emphasis added). If the legislative branch passes laws that are constitutional, the courts have no power to invalidate them. The Utah Constitution has made it clear that the powers of government are to be divided between the three branches and "no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others . . . ." UTAH CONST., Article V.